UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DENIS HARDY JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-123 |
| | § | |
| WILLIAMS PARTY BOATS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

The Texas Gulf Coast is blessed with warm waters filled with plentiful sportfish, easily accessible by chartered fishing expeditions. On an idyllic Texas day, a passenger on such an excursion can enjoy boundless views of the Gulf of Mexico, the hot sun spilling onto the boat's deck, the refreshing sea breeze, and the occasional briny taste of sea spray. Sometimes, however, the breeze is a little stiffer and the seas a little choppier. One such day led to this lawsuit.

### I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On the morning of November 19, 2011, Plaintiff Denis Hardy Johnson and 37 other passengers embarked on a 36-hour deep sea fishing trip with Defendant Williams Party Boats (WPB) aboard the CAPT JOHN.[2] The expedition departed

---

[1] The Court's recitation of the facts resolves all reasonable doubts in favor of Johnson as the non-movant. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir.2001) (citation omitted).

[2] Johnson's pleadings refer to the name of the passenger vessel as the "F.V. Captain John" or the

from Pier 19 in Galveston, helmed by Captain John Williams.  The CAPT JOHN is authorized by the United States Coast Guard to carry a maximum of 106 passengers up to 200 miles offshore and to operate in seas of up to 8.5 feet high. This latter measurement refers to the distance between the trough and crest of the waves.[3]

Prior to departure, Captain Williams checked offshore weather conditions. The National Oceanic and Atmospheric Administration (NOAA) report that he consulted revealed near-shore winds between 15 and 20 knots and seas between 4 and 5 feet; the report further revealed that the winds decreased to between 10 to 15 knots with seas between 3 to 5 feet at the incident site.[4]

Johnson contends that as the CAPT JOHN proceeded outbound, the seas were noted to be choppy and many passengers became seasick, retreating to the CAPT JOHN's sleeping bunks to lie down.  Johnson had been provided a bunk, but had given it up so his traveling companion could have more room.  Due to a shortage of beds, Johnson lay down on a bench affixed to the exposed upper deck of the CAPT JOHN.  Johnson alleges that a large wave caused him to be thrown

---

"CAPT JOHN," while WPB's pleadings refer to it as "M/V CAPT JOHN."  For simplicity, the Court will refer to the vessel as the CAPT JOHN.

[3] *See How are ocean waves described?*, NAT'L DATA BUOY CENTER (March 10, 2015, 8:53 P.M.), http://www.ndbc.noaa.gov/educate/waves.shtml.

[4] There appear to be inconsistent descriptions of the data contained in the NOAA weather report between the expert report of Richard L. Frenzel (WPB's expert) and the affidavits of Captain Williams and Frenzel.  *Compare* Docket Entry No. 16-2 at ¶6 (Frenzel affidavit) *and* Docket Entry No. 16-4 at ¶5 (Williams affidavit) *with* Docket Entry No. 14-2 at ¶¶ 1, 4 (Frenzel report).

from the bench and to injure his left shoulder. Following the accident, Captain Williams turned the vessel around and returned to port.

Johnson filed a negligence suit under general maritime law against WPB in state court, contending that the trip should have been cancelled due to rough sea conditions. After WPB removed to federal court, a scheduling order was entered setting December 5, 2014 as the deadline for Johnson to designate experts and furnish expert reports. *See* Docket Entry No. 6. On December 4, 2014, Johnson identified Commander David E. Cole as a retained marine safety expert but did not furnish an accompanying expert report. *See* Docket Entry No. 12. Five days after the deadline, Johnson faxed WPB a letter explaining the reason for the delay and asking for an extension of both parties' discovery deadlines. (*See* Docket Entry No. 21-3). WPB never responded to this inquiry.

Instead, WPB filed a Motion to Strike the expert testimony (Docket Entry No. 15). It then filed a Motion for Summary Judgment (Docket Entry No. 16) that relied in large part on Johnson's failure to provide an expert report that would establish liability. Johnson finally furnished Cole's report on February 6, 2015—two months after the designation deadline and the day before his response to WPB's Motion to Strike was due. *See* Docket Entry No. 18. Three days after furnishing the report, Johnson filed a pending Motion to Extend Time to File Expert Report (Docket Entry No. 21). Whether WPB is entitled to summary

judgment thus turns in large part on whether Johnson's late expert report is allowed.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.   ANALYSIS

"It is settled that the general maritime law imposes duties to avoid unseaworthiness and negligence." *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813 (2001) (citation omitted). The elements of negligence under general maritime law "are 'essentially the same as land-based negligence under the common law.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir.2005)). A plaintiff asserting a claim of maritime negligence must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant

breached that duty; (3) the plaintiff was injured; and (4) a causal connection exists between the defendant's conduct and the plaintiff's injury. *See Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir.2000) (citation omitted).

WPB contends that summary judgment is proper on three separate grounds. First, WPB argues that Johnson did not timely provide any opinion from a marine safety expert concluding that WPB breached an applicable standard of care. Resolution of this issue requires the Court to rule on Johnson's pending Motion to Extend Time to File and WPB's pending Motion to Strike.

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When determining whether to exclude expert testimony that has been improperly designated, the Fifth Circuit considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

The first factor is neutral. Johnson's explanation for the delay in filing Cole's report is that Cole needed to review Johnson's deposition testimony in order to prepare the report and the transcript did not become available until January 2,

2015. This explains why the report was not disclosed before the December deadline, but does not explain why the report was not furnished until February.

The other factors weigh in Johnson's favor. That the expert testimony is fundamentally important to Johnson's case is apparent from WPB's attempt to obtain summary judgment based on the absence of the report. Determining the scope of the duty WPB owed to Johnson, and whether WPB breached that duty, requires an understanding of applicable Coast Guard regulations, maritime safety practices with respect to the operation of charter fishing vessels, NOAA weather reporting, and the CAPT JOHN's structural specifications and performance capabilities in various weather and sea conditions. Because these are not matters of common knowledge and experience, expert testimony is important. *See Johnson v. Cenac Towing Inc.*, 2006 WL 5499506, at *3 (E.D. La. Nov. 21, 2006) (finding expert testimony would assist trier of fact as industry procedures and equipment for carrying crossover hoses on ships was not matter of common experience and knowledge). The second factor thus strongly weighs in Johnson's favor. *See Betzel*, 480 F.3d at 706, 709 (finding abuse of discretion when district court excluded late-designated experts and then granted summary judgment based on lack of expert testimony and noting that "the extreme end of the sanction spectrum was imposed against the lowest end of the prejudice spectrum").

Although "the importance of . . . [the] testimony cannot *singularly* override

the enforcement of local rules and scheduling orders," *Betzel*, 480 F.3d at 708 (citation omitted and italics in original), the remaining two factors do not weigh against allowing the late filing. With respect to the prejudice factor, WPB points out that the discovery deadline has passed and claims that it will incur expenses revising its expert report, deposing Cole, and potentially locating fact witnesses, re-designating a liability expert, and refiling a summary judgment motion in light of Cole's previously-unknown opinions. The Court understands WPB's concerns. *See Geiserman*, 893 F.2d at 792 (discussing detrimental effects of failure to follow discovery deadlines on court system, litigants, and public perception of lawyers and the judicial process). Unlike some of the cases upon which WPB relies, however, WPB was not blindsided by the late designation. Before the deadline, Johnson designated Cole as a retained marine safety expert who would testify regarding liability. WPB never responded to the letter Johnson faxed five days after the deadline explaining the delay on producing the report and asking for an extension of both parties' discovery deadlines. WPB instead produced its own expert report and filed motions without first attempting to resolve the situation with Johnson. The result is a discovery squall that could have been avoided. This is just one of several facts that distinguishes this case from others in which courts have excluded improperly designated expert testimony. *See, e.g.*, *Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 913 (5th Cir. 2012) (affirming district court's

denial of late designation when plaintiff moved to designate an additional expert three days after court had granted plaintiff late designation of three other experts in light of "long history of delays in the case"); *Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 774 (5th Cir. 2007) (affirming district court's decision to strike plaintiff's expert report when plaintiff previously had been granted an extension and still failed to produce report on time); *Soliz v. Assocs. in Med., P.A.*, 2007 WL 2141392, at *1, *3 (S.D. Tex. July 25, 2007) (denying late designation of two experts when plaintiff had not even identified experts until two and a half months after defendant designated its own expert); *St. John v. Regis Corp.*, 2007 WL 1238413, at *1 (S.D. Tex. Apr. 25, 2007) (denying plaintiff late designation when defendant repeatedly attempted to negotiate discovery extensions in good faith and plaintiff obstructed those efforts). And the concern about expenses can be mitigated if the Court awards costs and attorney's fees to the defense for the time spent drafting motions that addressed the late filing. *See Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) ("[A] party may be personally liable for *reasonable* expenses including attorney's fees *caused* by the failure to comply with a discovery order." (italics in original) (citation omitted)).

    Finally, as to the fourth factor, the Fifth Circuit has "repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time." *Betzel*, 480 F.3d at 708 (citation and internal

quotation marks omitted). In this case, a continuance would mitigate the prejudice associated with late designation, at least with respect to discovery deadlines. The Court therefore finds that the four factors weigh in favor of allowing late designation.[5] *Smith v. Johnson & Johnson*, 2010 WL 997057, at *3 (S.D. Miss. Mar. 16, 2010) ("[A] continuance and cost award should mitigate the prejudice to Defendants, and the interests of justice prefer that cases be decided on their merits."). In light of this holding, WPB's first argument in support of its summary judgment motion fails.

WPB next argues that it has proffered expert evidence demonstrating that WPB breached no duty to Johnson. However, now that Johnson has proffered competing expert evidence drawing just the opposite conclusion, this is a factual dispute that must be resolved at trial.

WPB's final basis for summary judgment is that Johnson described the wave that hit the CAPT JOHN and resulted in his injury as "rogue." WPB argues that "rogue" waves are not foreseeable, and resulting injuries are therefore not actionable as a matter of law. *See Cobb v. United States*, 471 F. Supp. 102, 107 (M.D. Fla. 1979) (dismissing complaint when "[t]he proximate cause of plaintiff's unfortunate accident was a 'sneaker wave' not reasonably foreseen by the officers and crew of the [the ship]"). In describing the accident and the wave, however, it

---

[5] WPB does not object to the late designation of Bo Yang as a non-retained medical provider. Yang is the acupuncturist Johnson claims he first consulted for ongoing shoulder pain after the expert witness designation deadline.

appears that Johnson was speaking colloquially and not using technical maritime jargon. Moreover, the expert witnesses for both sides dispute the general sea conditions on the day of the accident. The argument therefore does not warrant judgment as a matter of law.

* * *

Rulings concerning missed deadlines are challenging because they "place at odds two important principles of the civil justice system: the priority that disputes be resolved speedily, which requires adherence to deadlines, against the desire that the merits of a case decide its outcome." *Luu v. Int'l Inv. Trade & Serv. Grp.*, 2012 WL 2450773, at *1 (S.D. Tex. June 26, 2012). On many occasions, especially when multiple deadlines are ignored and an attorney's conduct evinces wanton disregard of court orders, the integrity of the court system requires excluding late filings. In this case—in which plaintiff's counsel missed one deadline and on his own initiative tried to fix the problem—the interest in having the case decided on the merits warrants a different result.

Defendant's Motion for Summary Judgment (Docket Entry No. 16) and Motion to Strike (Docket Entry No. 15) therefore are **DENIED**. Plaintiff's Motion to Extend Time (Docket Entry No. 21) is **GRANTED**. The Court will consider a defense request for more time to file an amended expert report that rebuts Cole's as well as a new docket call date. The Court will also consider a request by defense

counsel for an award of the fees attributable to the filings based on the failure to file an expert report.

**SIGNED** this 12th day of March, 2015.

```
                                    _____
                                           Gregg Costa
                                    United States Circuit Judge[*]
```

---

[*] Sitting by designation.